IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
BRIDGETT HOOKS,              )
                             )
        Plaintiff,           )
                             )        CIVIL ACTION NO.
        v.                   )        1:14cv1053-MHT
                             )            (WO)
DOLLAR GENERAL               )
CORPORATION, et al.,         )
                             )
        Defendants.          )
```

OPINION AND ORDER

This is a slip-and-fall case. Plaintiff Bridgett
Hooks brings claims of negligence per se, premises
liability, and wantonness against defendants Dollar
General Corporation, which operates the store where she
fell, and Farmers Home Furniture, which leases the
premises to Dollar General.[1]     This court has

---

1. The motion for summary judgment (doc. no. 29)
filed by Farmers Home Furniture and Glass Properties,
LLC explains that, subsequent to the incident at issue,
"[a]ny ownership interest Glass had in the property was
taken over by Farmers Home Furniture," and thus refers
to both defendants as one.  This court will adopt the
same approach.

jurisdiction pursuant to 28 U.S.C. §§ 1332 (diversity) and 1441 (removal).

This cause is before the court on the motions for summary judgment filed by Dollar General and by Farmers Home Furniture.  Because the two motions mostly raise the same arguments, they are considered together, except where noted.  For the reasons stated below, these motions will be granted in part and denied in part.

## I. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to parts of materials in the record, including depositions ... [or] showing that the materials cited do not

2

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In making its determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). To defeat a motion for summary judgment, however, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." <u>Id</u>. at 586.

Because this is a diversity case, the court applies the substantive law of Alabama, as articulated by the state courts. <u>Hanna v. Plumer</u>, 380 U.S. 460, 465 (1965) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

3

## II. FACTS

Hooks was a regular customer of a Dollar General Store in Enterprise, Alabama. Dollar General leases the store from Farmers Home Furniture.[2]

Hooks had shopped at this store an average of two or three times per week for the five years preceding the incident at issue here. She generally entered and exited the store using the handicap ramp--which was in front of the store and painted blue--because she had knee problems stemming from rheumatoid arthritis and

---

2. Dollar General (the lessee) argues that a term of its lease with Farmers Home Furniture (the lessor)--which warrantied that the premises were safe, that the lessor would maintain them, and that they were in compliance with the ADA--relieves it of any liability under Hooks's negligence-per-se theory (founded on an alleged violation of the ADA). However, Dollar General nowhere makes the same argument with respect to Hooks's premises-liability and wantonness claims. Because summary judgment will be granted on Hooks's negligence-per-se claim, the court need not address here whether any liability eventually found would be imposed jointly and severally on the two defendants.

4

had undergone knee surgeries.[3]   She had never noticed any problems with the ramp.

On the day in question, Hooks arrived at the store in the early afternoon.   She parked in a 'handicap' spot and walked across the parking lot and up the handicap ramp.   Because it was drizzling, the ramp was wet.   Hooks was wearing flip-flops.

In her deposition, Hooks stated that she did not have any difficulty walking up the ramp as she entered the store.   At that time, she did not notice anything wrong with the ramp; specifically, she did not see any broken concrete on the ramp.   She was having no trouble with her vision, and nothing obstructed her view of the ramp.   On her way into and out of the store, she was cautious, on account of the rain and her knee problems.

On the way out of the store, Hooks took the same path by which she had entered the store.   She was

_____

3. The defendants do not appear to dispute that Hooks is disabled.

carrying one shopping bag.  As she stepped on the ramp, she slipped and fell, suffering significant injuries.

Hooks stated that she stepped onto the ramp with her left foot, and that it slid, ending up on the ground beside the ramp.  She was clear that she slid, and did not trip.  However, she was unable to identify where on the ramp she first stepped, or how many steps she had taken on the ramp prior to sliding.  See doc. no. 27, ex. A, at 212-15.

When asked whether she had "any idea what caused [her] to begin to fall," Hooks initially said no.  Id. at 173.  However, she later answered affirmatively the question: "Was it your left foot that began to slide? Is that what started your fall?"  Id. at 177.  Hooks further testified that "the piece [she] stepped on was loose," agreed that "a piece came off the ramp after [the] fall," and stated that after she fell, that piece was "laying off beside [her]."  Id. at 175.  When Hooks was asked again whether she "recall[ed] what it was

that made [her] slip and fall," she replied that "[i]t was the looseness of the ramp"; when asked to confirm that "it was a loose piece of the ramp [that] caused you to slip," she nodded her head.[4]  See doc. no. 40, ex. A, at 198-99.

Hooks did not report the accident to the store at the time; she later called to make a report.

### III. DISCUSSION

Hooks seeks damages for injuries she sustained when she slipped and fell on a ramp connecting the parking lot to the sidewalk in front of the store.  She alleges that the ramp was constructed in violation of applicable law and was inadequately maintained. Specifically, she raises three claims: (1) that the construction of the ramp failed to comply with the

---

4. A color photograph of the ramp, submitted in evidence, reveals that it was transected by cracks, and that portions of the concrete along both edges were chipped away.  Doc. no. 44, ex. C.

requirements of the Americans with Disabilities Act, and that this failure constituted negligence per se; (2) that the defendants breached the duty of care they owed her as an invitee in how they maintained the ramp, that this breach caused her injury, and that the defendants were therefore negligent under a premises-liability theory; and (3) that the defendants knowingly disregarded the likelihood that injury would result from their inadequate maintenance of the ramp, that this disregard caused her injury, and that the defendants were therefore liable for wantonness. Each claim is addressed in turn below.

## 1. Negligence Per Se

Hooks suggests that the ramp on which she slipped and fell was not compliant with the ADA, because it was 'built-up,' extending out from the curve, rather than concave (i.e., cut into the curb). Hooks's claim of negligence per se under the ADA fails, however,

because, as counsel acknowledged at the pretrial hearing, she has not alleged (much less offered evidence to prove) that this violation of the ADA caused her injuries.[5]

In order for a plaintiff to show that violation of a statute or ordinance constitutes negligence per se in Alabama, she must show: "(1) The party charged with negligent conduct [has] violated the statute; (2) the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute; (3) the injury was of a type contemplated by the

---

5. The defendants suggest that Hooks is also making a claim directly under the ADA. The court does not read her complaint to raise such a claim. To the extent that Hooks's responses to the motions to dismiss do discuss, quite briefly, a claim that the defendants were deliberately indifferent to her federally protected rights under the ADA, this claim fails because although private plaintiffs can obtain damages for intentional discrimination (including deliberate indifference) under Title II of the ADA, no private right of action for money damages is available under the provision of the ADA relevant to this case, Title III. Jairath v. Dyer, 154 F.3d 1280, 1283 & n.7 (11th Cir. 1998).

statute; and (4) the statutory violation proximately caused the injury.  <u>Edwards v. United States</u>, 552 F. Supp. 635, 637 (M.D. Ala. 1982) (Thompson, J.) (quoting <u>Fox v. Bartholf</u>, 374 So. 2d 294, 295 (Ala. 1979) (internal quotation marks omitted)).

Even assuming that the ramp at issue was indeed constructed in violation of the ADA and its implementing regulations, and that Hooks is a disabled person who is protected by the statute, Hooks has failed to identify any evidence in the record suggesting that the design of the ramp proximately caused her to fall.  Indeed, Hooks testified in her deposition that it was the loose, broken concrete of the ramp that caused her to fall; she nowhere implicated the cut of the ramp.  The defendants are therefore entitled to summary judgment on Hooks's claim of negligence per se.

The court notes, moreover, that the ADA is not relevant to the standard of care applicable to Hooks's

10

premises-liability claims, for much the same reason: ADA standards governing the <u>construction</u> of the ramp are in no way relevant to whether the failure to <u>maintain</u> the ramp breached a duty of care.

## 2. Premises Liability

Next, Hooks raises a premises-liability claim.[6] In a premises-liability case, a plaintiff must prove the same elements of negligence as in any tort case: duty, breach of duty, causation, and damages. <u>Sessions v. Nonnenmann</u>, 842 So. 2d 649, 651 (Ala. 2002). Under Alabama law, "[a] store patron is generally considered

---

6. Hooks also appears to articulate a 'traditional' negligence claim, as distinct from her premises-liability claim. As this court has explained, however, only "[w]hen the affirmative conduct of the landowner causes the injury [do] traditional negligence principles apply" under Alabama law; when the injury arises from a "condition of the premises," by contrast, premises-liability standards govern. <u>Shelley v. White</u>, 782 F. Supp. 2d 1295, 1296 (M.D. Ala. 2010) (Albritton, J.) (quoting <u>Lilya v. Greater Gulf State Fair, Inc.</u>, 855 So. 2d 1049, 1053 (Ala. 2003)). Hooks contends that she was injured by a condition of the premises, not any affirmative act by the defendants.

a business invitee for premises-liability purposes,"
Blalock v. Wal-Mart Stores E., LP, No. 1:06cv381, 2007
WL 1412445, at *1 (M.D. Ala. May 11, 2007) (Thompson,
J.), and the parties agree that the duty of care owed
to invitees is applicable here.

That duty is "to exercise reasonable care to
provide and maintain reasonable safe premises for the
use of [] customers." Denmark v. Mercantile Stores
Co., 844 So. 2d 1189, 1192 (Ala. 2002) (quoting Maddox
v. Kmart Corp., 565 So. 2d 14, 16 (Ala. 1990)).
However, under Alabama law, "a landowner is not the
insurer of the safety of his invitees, [so] the owner's
duty is negated where the invitee or customer knew or
should have known about the hazard that purportedly
caused his injury." Blalock, 2007 WL 1412445, at *1
(citing Ex parte Moutain Top Indoor Flea Mkt., 699 So.
2d 158, 161 (Ala. 1997); Jones Food Co. v. Shipman, 981
So. 2d 355, 361-63 (Ala. 2006)).

12

With respect to this claim, the defendants contend that Hooks has failed to create a dispute of material fact as to (1) the cause of her fall and (2) whether the hazard that caused the fall was open and obvious. Viewing the evidence in the light most favorable to Hooks, the court disagrees.

First, the defendants assert that Hooks has offered only speculation as to the cause of her fall.  On this point, they cite Ex Parte Howard L. Martin Distributing Co., Inc., 769 So. 2d 313, 315 (Ala. 2000) ("Alabama juries are not permitted to speculate as to the cause of an accident.  See Brookwood Medical Ctr. v. Lindstrom, 763 So. 2d 951 (Ala. 2000); Turner v. Azalea Box Co., 508 So. 2d 253, 254 (Ala. 1987) ('[w]hen evidence points equally to inferences that are favorable and to inferences that are unfavorable to the moving party, the evidence lacks probative value; and the evidence may not be used to support one inference

over another because such use is mere conjecture and speculation')").

However, this case is distinguishable from <u>Ex Parte Howard L. Martin Distributing Co.</u>  There, the plaintiff agreed that she "would have to speculate" as to what she tripped on, because she did not "know" or "see"-- either before <u>or after</u> her fall--what aspect of the entryway to the store caused her to fall.  769 So. 2d at 315.  She addressed the cause of her fall multiple times in her deposition, and every single statement was qualified (with phrases like "As far as I know..." and "I think...").

Here, while Hooks was not a model of clarity or conviction in her deposition testimony regarding the moments leading up to her fall, she stated that she fell because of "the looseness of the ramp": a piece of the concrete along the edge of the ramp came loose underfoot.  <u>Compare</u> <u>Tice v. Tice</u>, 361 So. 2d 1051, 1052 (Ala. 1978) (affirming a grant of summary judgment in a

14

case where the plaintiff "could not state the cause of her fall," and "show[ed] only that there were things in the yard over which she might have tripped," including children's toys, one of which she "believed ... must" have caused her fall).  In an additional and important contrast to <u>Ex Parte Howard L. Martin Distributing Co.</u>, Hooks also testified that she observed and identified the mechanism of injury--the now-fragmented concrete--once she fell to the ground.  <u>Compare</u> <u>id.</u> at 315 ("Q.  ... So you couldn't say one way or the other what it was that caused you to trip, is that fair to say?  A.  Right.  There was nothing there when I got up that I could tell.").

Hooks's testimony could be more compelling, and a factfinder might be persuaded by other evidence at trial that her fall was caused by the rain-slicked surface of the ramp and not by its crumbling edges. But she stated in her deposition that the loose ramp did cause her fall, not that she believed that it did.

15

Although "a court may disregard [the non-moving] party's sworn testimony if the testimony is internally inconsistent" in "determining whether [that] party has created facts sufficient to defeat a motion for summary judgment," Willis v. City of Los Angeles, 57 F. App'x 283, 285 (9th Cir. 2002), this principle does not warrant summary judgment in the present case. Hooks did respond with a one-word denial when initially asked whether she knew "what caused [her] to begin to fall," but a factfinder could reasonably decide to believe her later, more fully articulated testimony identifying the cause of her fall. Moreover, Hooks offered collateral support for this later statement, in testifying that after she fell, she saw a piece of concrete off to the side of the ramp. Her earlier answer might impact her credibility, but credibility determinations are not to be made at the summary-judgment stage. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

16

In sum, a factfinder that credits Hooks's testimony could decide the case in her favor. See Lancaster v. Carnival Corp., 85 F. Supp. 3d 1341, 1346-47 (S.D. Fla. 2015) (Moore, J.) ("Although Plaintiff stated at one point in his deposition that he never saw what he tripped over, he also stated at other times that he saw the bag he tripped over and he described it in detail. Defendant argues that Plaintiff's account should be ignored because it is internally inconsistent; however, implicit in Defendant's argument is its concession that the record contains evidence that Plaintiff tripped over a piece of luggage. The inconsistency in Plaintiff's account is a credibility and fact-finding determination for the jury, but the evidence when viewed in the light most favorable to Plaintiff could lead a rational juror to conclude that Plaintiff tripped over a piece of luggage."). The issue of causation should therefore go to trial.

17

Second, the defendants argue that there is no dispute of material fact as to whether the defect in the ramp that allegedly caused Hooks's fall was open and obvious.

"For a defect to be 'known,' [or 'open,'] the plaintiff must be made aware of the existence of the condition and must appreciate the danger it involved. 'Obvious' means that the condition and risk are apparent to, and would be recognized by, a reasonable person in the position of the invitee.  Therefore, the 'obvious' test is an objective one, whereas the 'known' test is subjective."  Blalock, 2007 WL 1412445, at *2 (citations and internal quotation marks omitted).[7]

_____

7. The Alabama Supreme Court has vacillated as to whether the openness and obviousness of a hazard is an affirmative defense or the negation of the duty element of the tort, and thus whether defendant or plaintiff bears the ultimate burden of proof.  See Blalock, 2007 WL 1412445, at *3 (observing that although Denmark v. Mercantile Stores Co., 844 So. 2d 1189, 1194 (Ala. 2002), suggests that it is an affirmative defense, "this interpretation of the law [is] contradicted by more recent cases," such as Jones, 981 So. 2d at 361- (continued...)

Hooks states in her deposition that she did not notice the broken concrete, or appreciate its danger, until after her fall. Subjectively, the defect was not known to her.

The more difficult question is whether the broken concrete was objectively obvious. The defendants repeatedly emphasize that Hooks admitted at her deposition that the damage to the ramp was "in the open" and "obvious" to her <u>after</u> she fell. Doc. no. 27, ex. A, at 215-16. They also point out that Hooks had seen and used the ramp many times before she fell. But in some cases, a hidden trap will become obvious only after it has sprung (and no matter how many times it has been observed); an iceberg on the verge of calving looks very much intact. Hooks alleges that loose concrete gave way under her foot and separated

---

62). Summary judgment is due to be denied on this claim under either standard, so the court need not decide the issue here. However, the parties are to address it in their pretrial briefs.

19

from the ramp; based on this testimony, a reasonable factfinder could conclude that <u>before</u> the piece on which Hooks stepped had separated from the ramp, it was not obvious.[8]  Whether the defect in the ramp was an obvious one is thus a question for trial.

### 3. Wantonness

The Supreme Court of Alabama has defined wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  <u>Alfa Mut. Ins. Co. v. Roush</u>, 723 So. 2d 1250, 1256 (Ala. 1998) (citation omitted).  "Wantonness may arise after

---

8. As the defendants point out, Hooks's expert, Traci Campbell, stated in her deposition that the broken concrete along portions of the ramp's edge was "easy to see without much effort," because "there is a contrast between the gray of the [broken] concrete and the blue of the [unbroken] painted part." Doc. no. 49, ex. 1, at 115.  However, Campbell nowhere suggested that it would be easy to see that a piece of concrete along the edge was <u>about</u> to break off.

discovery of actual peril, by conscious failure to use preventative means at hand." <u>Tolbert v. Gulsby</u>, 333 So. 2d 129, 132 (Ala. 1976) (citation omitted).[9]

The Alabama Supreme Court has held, as Hooks notes, that wantonness claims should be "submitted to the jury unless there is a total lack of evidence from which the jury could reasonably infer" that the defendant was conscious of the serious risk of injury its actions or omissions created, <u>McDougle v. Shaddrix</u>, 534 So. 2d 228, 231 (Ala. 1988) (citation omitted), but that holding came down before the "scintilla rule" of evidence was replaced in 2006 by the requirement that "proof by substantial evidence shall be required to

---

9. Hooks has certainly presented evidence sufficient to allow a reasonable factfinder to conclude--as required for a finding of premises liability--that the defendants knew or should have known (because they inspected the ramp) that the concrete along the edge of the ramp was broken. However, to prevail on her wantonness claim, Hooks would have to prove not only that the defendants knew of the broken concrete along the edge of the ramp, but also that they were aware of and consciously disregarded the <u>danger</u> it posed.

21

submit an issue of fact to the trier of the facts,"
Ala. Code § 12-21-12.

Critically, for present purposes, evidence that a
defendant is aware that another person has previously
"fallen in the same area where the pavement [i]s
broken," absent evidence showing that the broken
pavement is "what caused th[at] fall," does not suffice
to carry a plaintiff past the summary judgment stage on
a wantonness claim, even under the no-longer-applicable
scintilla rule.  <u>Berness v. Regency Square Assocs.,
Ltd.</u>, 514 So. 2d 1346, 1350 (Ala. 1987).

Although Hooks has presented evidence that the
defendants were aware of two other patrons who fell on
the ramp, one in 2009 and one in 2010, she has offered
no evidence to suggest that these falls were caused by
the defect that she alleges caused hers: loose concrete
along the edge of the ramp.  In fact, the evidence
makes clear that both the 2009 and 2010 falls were due
to the ramp being wet.

The documents and deposition testimony in evidence
regarding the 2009 incident show that the store
recorded, on a form signed by the customer who fell,
the "Cause of Incident" to be "slippery ramp."[10]   Doc.
no. 40, ex. C, at 4.   Dollar General's District Manager
agreed in her deposition that the store had made a
"report to corporate concerning a need for maintenance
on the ramp" and that "the landlord was contacted"
after the incident, but there is no indication that
this communication concerned broken concrete on the
edges of the ramp.   Doc. no. 40, ex. B, at 66.   As for
the 2010 incident, the only evidence regarding its
cause is in the form of Famers Home Furniture's
response to one of Hooks's interrogatories, which

---

10. In follow-up notes, a store employee reported
that the customer's sister called and said that the
customer "fell on a big crack on the ramp."   However,
after another employee found "no visible cracks" in the
ramp, the customer herself was contacted again "to find
out exactly what her claim was"; she again stated that
she "slipped b/c of the rain in the parking lot."   Doc.
no. 40, ex. C, at 5.

states that the customer "slipped on the ramp due to [it] being wet." Doc. no. 40, ex. C, at 2.

Finally, Hooks points to an email exchange between a property inspector and a property maintenance supervisor, both employed by Farmers Home Furniture, which occurred a few months before her fall. In it, the inspector stated that the ramp "need[s] to be replaced with one that cuts into the sidewalk." The supervisor replied that there was no "money in the budget for this," but asked whether "painting it with slip resistant paint would ... help the problem with people slipping." The inspector answered in the affirmative, and then informed the supervisor that when Farmers Home Furniture "fix[es] the ramp, [it] will most likely be required to bring all of them up to code. Budget $ 13,000." Doc. no. 40, ex. F.

While this evidence does suggest that the defendants were aware that their ramp was dangerously slippery, and were quite irresponsible in remedying

24

that problem, Hooks specifically contends that she fell
<u>not</u> because the ramp was slippery, but rather because
of loose concrete along its edge.[11]   As a result,
summary judgment is due to be granted on her wantonness
claim.

---

11. It is of course true that if the defendants had
responded appropriately to the known risk of injury
posed by the slipperiness of the ramp, they might well
have opted to replace the ramp (as they eventually did,
after Hooks's fall).  Had the ramp been replaced, the
broken concrete along its edge would have been removed,
and could not have caused her to fall.  This sort of
incidental causal relationship, however, is not
sufficient to support a wantonness claim.  Consider
this analogy:  Multiple patrons of a cafeteria have
burnt themselves on the poorly insulated handle of a
decrepit toaster oven.  If it had been promptly
replaced with a new one, the person in whose face its
glass door recently exploded would not have been
injured.  But the cafeteria's knowledge that patrons
had been burnt shows its awareness that failing to
replace the microwave would likely result in future
burns--not any awareness of the risk of future shrapnel
injuries.

* * *

For the foregoing reasons, it is ORDERED as follows:

(1) Defendant Dollar General Corporation's motion for summary judgment (doc. no. 27) and defendants Farmers Home Furniture and Glass Properties, LLC's motion for summary judgment (doc. no. 29) are granted as to all claims except the premises-liability claim.

(2) The premises-liability claim will go to trial.

DONE, this the 10th day of November, 2015.

_ /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE